UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>MARK LEE BAUSCH,<br><br>        Defendant. | Case No. 2:14-cr-00399-KJD-EJY<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE** |

Before the Court is Defendant's *pro se* Motion for Compassionate Release (#474). The government did not respond and the Federal Public Defenders Office did not supplement the motion.

I.        Factual and Procedural Background

On May 1, 2018, Defendant Mark Bausch ("Bausch") pleaded guilty to 38 counts of conspiracy, wire fraud, and money laundering and aiding and abetting. (#425, at 1). Bausch's scheme revolved around his fraudulent company. Pre-Sentence Investigation Report at 7. Bausch and his employees offered to help small businesses obtain grants from public and private entities. Id. Bausch and his co-defendants operated multiple telemarketing companies to prey on small business owners. Id. The scheme obtained approximately $13,966,329.30 from its victims. Id. at 12. The Court sentenced Bausch to 96 months in prison, followed by three years of supervised release. (#425, at 2–3).

Bausch filed this motion after testing positive for COVID-19 in prison. (#474, at 1). He is worried that his newly diagnosed medical conditions, combined with a potential new wave of COVID-19 put him at additional risk. Id. at 2. Bausch submitted a request to the warden of Terminal Island FCI requesting compassionate release on April 6, 2020. Id. at 2–3. Bausch's positive COVID-19 test results returned positive on April 20, 2020. Id. at 3. Bausch was

removed from his cell unit and placed in quarantine until recovery. Id. The warden denied Bausch's request for compassionate release on June 6, 2020, stating he had not served enough of his sentence and that his underlying medical conditions of borderline morbid obesity and chronic foot, knee, and low back pain did not qualify him for compassionate release. Id. at 9. Believing he exhausted his administrative remedies, Bausch filed this motion on September 22, 2020. Id. at 67. Bausch now argues that he has more severe health issues than indicated in the warden's rejection of his request for administrative remedy. Specifically, Bausch alleges he may have had a mini stroke, is morbidly obese, as opposed to borderline morbidly obese, and has now been diagnosed with diabetes and hypertension. Id. at 26–33. Bausch argues that these new medical conditions, combined with the Bureau of Prisons' ("BOP") failure to adequately prevent the spread of COVID-19 and provide care for inmates at Terminal Island, constitute extraordinary and compelling reasons to justify his compassionate release.

## II.  Legal Standard

The district court that imposed sentence on a criminal defendant has authority to modify the term of imprisonment under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). That statute provides, in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that […]extraordinary and compelling reasons warrant such a reduction […] and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. §§ 3582(c)(1)(A), 3582(c)(1)(A)(i).

If the defendant has exhausted administrative remedies, the analysis is twofold. First, the Court must consider the same factors applicable at the original sentencing, enumerated in 18

U.S.C. § 3553(a), to the extent they remain applicable at the time the motion is brought. 18 U.S.C. § 3582(c)(1)(A). Second, the Court must find "extraordinary and compelling reasons" to release a defendant from Bureau of Prisons ("BOP") custody in a policy statement. Id.

### III. Analysis

The Court construes a *pro se* motion liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed . . ."). However, the Court "lacks the power to act as a party's lawyer, even for *pro se* litigants." Bias v. Moynihan, 508 F.3d 1212, 1219 (9th Cir. 2007). Construing his motion liberally, the Court finds that Bausch has failed to establish extraordinary and compelling reasons to justify early release.

Bausch argues that Terminal Island FCI is unequipped to provide health care and protect the inmates from COVID-19. While federal facilities may have struggled during the early stages of the pandemic, it appears the BOP has made strides in protecting inmates. As of the date of this writing, Terminal Island FCI has no infected inmates and only four infected staff. FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Jan. 28, 2021). The BOP has suspended all visitations while adding phone time for inmates, limited movement to prevent congregations, performed COVID-19 screenings for all new intakes, and suspended all staff training and travel. BOP MODIFIED OPERATIONS, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Jan. 28, 2021). The BOP has also emphasized home confinement, even without judicial interference, for those at high risk and has "significantly increased its placement of offenders on home confinement." FREQUENTLY ASKED QUESTIONS REGARDING POTENTIAL INMATE HOME CONFINEMENT IN RESPONSE TO THE COVID-19 PANDEMIC, https://www.bop.gov/coronavirus/faq.jsp#:~:text=Since%20the%20release%20of%20the,of%20 offenders%20on%20home%20confinement (las visited Jan. 28, 2021). Finally, the BOP has begun vaccinating both staff and inmates and "leads all jurisdictions and Federal entities in its rate of vaccination utilization." COVID-19 VACCINATION EFFORTS COMMENDED, https://www.bop.gov/resources/news/20210116_covid_vaccine_efforts_commended.jsp (last visited Jan. 28, 2021). The BOP has adjusted its operations and is better able to protect inmates

now than when Bausch tested positive.

Bausch received a positive COVID-19 test in April 2020. Recent studies show that reinfection is unlikely. One study shows that neutralizing antibodies are stably produced for at least 5–7 months after COVID-19 infection.[1] See Tyler J. Ripperger *et al.*, Orthogonal SARS-CoV-2 Serological Assays Enable Surveillance of Low-Prevalence Communities and Reveal Durable Humoral Immunity, IMMUNITY (2020), https://www.cell.com/immunity/fulltext/S1074-7613(20)30445-3. Reinfection is seen in fewer than 1% of people and the protection gained from infection is similar to the protection gained from vaccination. Robert Hart, Past COVID-19 Infection Gives Vaccine-Like Immunity for Months, Study Finds, FORBES (Jan. 14, 2021), https://www.forbes.com/sites/roberthart/2021/01/14/past-covid-19-infection-gives-vaccine-like-immunity-for-months-study-finds/?sh=c411b6410236. Because reinfection is rare and infection gives a person protection from the virus for months after, Bausch cannot show extraordinary and compelling reasons that justify his early release.

Because the BOP has improved its protection of inmates from COVID-19 and Bausch likely has vaccine-like protection from the virus, the Court denies the motion.

Bausch has also filed a motion for appointment of counsel to supplement his motion for compassionate release. (#475). The right to appointed counsel "extends to the first appeal of right, and no further." Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). Having considered Bausch's request together with his motion for compassionate release, the Court finds that Bausch has adequately articulated his claims "in light of the complexity of the legal issues involved." Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986). Additionally, the District of Nevada issued a general order establishing procedure to appoint the Federal Public Defender's office ("FPD") to represent defendants that filed a pro se motion for compassionate release.[2] FPD did not supplement the brief and it appears Bausch did not request FPD representation. Therefore, Bausch's motion is denied.

---

[1] COVID-19 is new, and data is limited so the effects after 5–7 months is unknown. Long-term studies are needed to determine if the protection does not last longer.

[2] The order in its entirety can be found at https://www.nvd.uscourts.gov/wp-content/uploads/2020/04/General-Order-2020-06-re-FIRST-STEP-Act.pdf

IV.     Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Compassionate Release (#474) is **DENIED**.

IT IS FURTHER ORDERED that Defendant's Motion for Appointment of Counsel (#475) is **DENIED**.

Dated this 28th day of January, 2021.

_____
Kent J. Dawson
United States District Judge